UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

ILEEN CAIN,

                           Plaintiff,                        **MEMORANDUM & ORDER**
                                                              13-CV-5807 (MKB)

           v.

JEROME RAMBERT, KENYA POPE, BRIAN
MITCHELL, KAREN RUTH, UNIKA STEELE,
JANE DOE and HAAZIQ PAUL REID,

                           Defendants.

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiff Ileen Cain, proceeding *pro se*, commenced this action on October 21, 2013,

against her landlord, Jerome Rambert, and two neighbors, Kenya Pope and Brian Mitchell,

alleging violations of the Fair Housing Act of 1968, as amended by the Fair Housing

Amendments Act of 1988, 42 U.S.C. § 3601 *et seq.* ("FHA"), the Americans with Disabilities

Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 794 *et seq.* (the "Rehabilitation Act"), the Equal Protection Clause of the Fourteenth

Amendment of the United States Constitution, the "Equal Justice Under Telecommunications

Act," the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and

the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), as

well as city and state law claims for retaliatory eviction, breach of warranty of habitability and

breach of contract.  By order dated November 26, 2013, the Court granted Plaintiff's request to

proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a), and granted Plaintiff leave to file an

amended complaint.  On January 30, 2014, Plaintiff filed an Amended Complaint against her

landlord Jerome Rambert, several tenants including Kenya Pope, Brian Mitchell, Karen Ruth,

Unika Steele, and Jane Doe, and New York City Police Officer Haaziq Paul Reid. (Docket Entry No. 7.) On February 6, 2014, Plaintiff requested the appointment of *pro bono* counsel. For the reasons discussed below, Plaintiff's Amended Complaint is dismissed for failure to state a claim upon which relief may be granted and her request for the appointment of counsel is denied.

## I.  Background

Plaintiff was diagnosed with post-traumatic stress disorder in 2007. (Am. Compl. 1.)[1] In March 2012, Plaintiff moved into a Section 8 apartment on Stuyvesant Avenue in Brooklyn, New York.[2] Rambert, the landlord of the building in which Plaintiff lives, disclosed Plaintiff's disability to Ruth, a tenant. (*Id.*) Because Plaintiff did not respond to sexual advances and propositions from Ruth and another tenant, Steele, they organized "the spreading of lies regarding Plaintiff's sexuality and mental capacity, with the aiding and abetting of Defendant Pope [and] Defendant Mitchell," two other tenants in the building. (*Id*.) "Throughout the community . . . and the internet Plaintiff is called 'bi coo coo bi too, kook kook . . . .'" (*Id*.) "The rant is continued by Defendants Ruth and Steele" through the use of an acoustic device that emits disturbing noises "that are harmful to Plaintiff['s] hearing . . . and interrupt[] sleep," and

---

[1]  The Court has paginated Plaintiff's Amended Complaint for ease of reference and assumes that the factual allegations are true for the purposes of this decision.

[2]  Section 8 of the Housing Act of 1937, as codified by 42 U.S.C. § 1437f, is a federal housing assistance program that provides, among other things, rental assistance to eligible low-income tenants who reside in units owned by participating landlords. *See* 42 U.S.C. § 1437f; *see also* Frederick K. Grittner, *Assisted housing – Section 8 Housing Assistance Program*, *in* 2 Fed. Admin. Prac. § 1506, (West, ed., 2013); Department of Housing and Urban Development, *Housing Choice Vouchers Fact Sheet*, http://portal.hud.gov/hudportal/HUD?src=/topics/housing_choice_voucher_program_section_8 (last visited May 27, 2014); New York City Housing Authority, *Housing Choice Voucher Program — Section 8*, http://www.nyc.gov/html/nycha/downloads/pdf/lh_housing_choice.pdf (last visited May 27, 2014).

through "telecommunication tools such as the [I]nternet."[3]  (*Id*. at 1–2.)  Ruth and Steele yell "coo coo care care care coo kook her kook her" during the night and scream and bang on the walls.  (*Id*. at 5.)  Ruth and Steele have also gathered personal information about Plaintiff, attempted to make false police reports against Plaintiff and have called Emergency Medical Services ("EMS"), alleging that Plaintiff is an emotionally disturbed person.  (*Id*. at 2.)  Pope "is aiding and abetting" Steele and Ruth by calling out "koook it coo coo coo coo coo coo coo kook it he care he care kook it kook it," as Pope enters and leaves the building.  (*Id*. at 2.)  Mitchell has entered and left the building "yelling the same rant," and told Plaintiff that Plaintiff needs medication.  (*Id*. at 3.)  Reid, a New York City police officer, is "aiding and abetting" the allegations in the Amended Complaint and "put[ting] Plaintiff['s] life in danger . . . by not informing Plaintiff he was soliciting sex from Defendants Pope and Steele."  (*Id.* at 3.)

Plaintiff also alleges that "[t]he foundation of the house is shoddy and this amplifies sound," that her apartment "is unfit for human privacy," and that as a result she is unable to speak on the telephone or have company.  (*Id*. at 6, 9.)  Plaintiff has filed numerous reports with the New York City Police Department and the Office of the New York State Attorney General, which she attaches to the Amended Complaint.  (*See* Police Reports, annexed to Am. Compl. as Ex. 3; Letter from Attorney General, annexed to Am. Compl. as Ex. 4.)  Plaintiff has sent over

---

[3]  Plaintiff's Amended Complaint reads in part:
> Throughout the community (communities), and the internet Plaintiff is called bi coo coo bi too, kook kook, mock it, coo her, kook and Plaintiff need medication and Plaintiff need to be evaluated. The rant is continued by Defendants Ruth and Steele in the confines of [the building] using an acoustic device (voice changer). Sounds made are clucking duck quack popping shattered glass piercing screeching shrill Defendants constantly tell Plaintiff it does not have to be this way kook kook get down, coo coo move leave moo moo (leave).

(Am. Compl. 1–2.)

400 text messages to Rambert "describing the events taking place on [the] property as they unfold," as well as certified notarized mail which was returned to Plaintiff. (Am. Compl. at 4.) Since Plaintiff made the complaints to the police, Rambert has initiated "frivolous" holdover proceedings against her. (*Id.*) The holdover proceedings initiated by Rambert have been dismissed due to his failure to appear and improper service. (*Id*. at 5.) Plaintiff seeks monetary damages and unspecified injunctive relief, and seeks to have this Court "evict the tenants" who reside in the building. (*Id*. at 10–11.)

## II. Discussion

### a. Standard of Review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although all allegations contained in a complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* In reviewing a *pro se* complaint, the Court must be mindful that the Plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). If a liberal reading of a complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint. *See Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Branum v. Clark*, 927 F. 2d 698, 705 (2d Cir. 1991)). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action, if it determines the action "(i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  A court's review of a complaint is limited to the four corners of the complaint, but it may also review (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) documents deemed integral to the complaint, and (4) public records.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (documents attached to the complaint, those incorporated by reference, and those integral to the complaint); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (documents integral to the complaint); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (public records).

A plaintiff seeking to bring a lawsuit in federal court must establish that the Court has subject matter jurisdiction over the action.  *See, e.g.*, *Monreal v. New York*, 518 F. App'x 11 (2d Cir. 2013) (affirming dismissal of *pro se* complaint for failure to establish subject matter jurisdiction); *Zito v. N.Y.C. Office of Payroll Admin.*, 514 F. App'x 26 (2d Cir. 2013) (same); *Chestnut v. Wells Fargo Bank, N.A.*, No. 11-CV-5369, 2012 WL 1657362, at *3 (E.D.N.Y. May 7, 2012) ("Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking.").  A court's lack of subject matter jurisdiction "is not waivable and may be raised at any time by a party or by the court *sua sponte*.  If subject matter jurisdiction is lacking, the action must be dismissed."  *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000).  Federal subject matter jurisdiction is available only when a "federal question" is presented, or when plaintiffs and defendants have complete diversity of citizenship and the

amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. In order to invoke federal

question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of

the United States." 28 U.S.C. § 1331.

### b. Plaintiff's Amended Complaint

By Memorandum and Order dated November 26, 2013, Plaintiff was granted leave to

amend the Complaint to "provide facts sufficient to allow each named Defendant to have a fair

understanding of what the Plaintiff is complaining about and to know whether there is a legal

basis for recovery" for housing discrimination under the FHA, the ADA, or Section 504. *Cain v.*

*Rambert*, No. 13-CV-5807, 2013 WL 6194294, at \*4 (E.D.N.Y. Nov. 26, 2013) (quoting

*Knowles v. Namdor Inc.*, No. 13-CV-3746, 2013 WL 5887039, at \*2 (E.D.N.Y. Oct. 31, 2013)).

Plaintiff's Amended Complaint provides more detailed factual allegations regarding the names

and activities of other tenants in the building. However, although the Court is sympathetic to

Plaintiff's circumstances, even under the less stringent standards applicable to *pro se* complaints,

Plaintiff's Amended Complaint fails to state a plausible housing discrimination claim pursuant to

the FHA, the ADA, the Rehabilitation Act or the Equal Protection Clause.

### i. Subject matter jurisdiction

As an initial matter, Plaintiff seeks to have the Court evict other tenants in her building,

but the Court has no authority to do so since federal courts, unlike state courts, have no

jurisdiction over landlord-tenant matters. *Galland v. Margules*, No. 05-CV-5639, 2005 WL

1981568, at \*1 (S.D.N.Y. Aug. 17, 2005) (noting that federal courts do not have federal question

subject matter jurisdiction over state residential landlord-tenant matters), *aff'd*, 191 F. App'x 23

(2d Cir. 2006); *see also McMillan v. Dep't. of Bldgs.*, No. 12-CV-318, 2012 WL 1450407, at \*2

(E.D.N.Y. Apr. 26, 2012) (finding that federal courts lack subject matter jurisdiction over claims concerning eviction); *Rosen v. North Shore Towers Apartments, Inc.*, No. 11-CV-0752, 2011 WL 2550733, at *4 (E.D.N.Y. Jun. 27, 2011) (noting that courts in this Circuit "routinely dismiss for lack of subject matter jurisdiction" claims concerning eviction (collecting cases)).

### ii. FHA claims

The FHA makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of . . . sex," or because of "a handicap of that buyer or renter." 42 U.S.C. § 3604(a), (f)(1). It also prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of . . . sex," or because of "a handicap of that person." § 3604(b), (f)(2); *see also Taylor v. Harbour Pointe Homeowners Ass'n*, 690 F.3d 44, 49 (2d Cir. 2012), *cert. denied*, 568 U.S. ---, 133 S. Ct. 1280 (2013). In addition, the FHA prohibits retaliation against individuals who engage in "protected activity" under the statute. *See* 42 U.S.C. § 3617 ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by" the statute.).

Plaintiff appears to allege in the Amended Complaint "sexual harassment, gender discrimination, perceived disability discrimination, [and] discrimination based on . . . sexual orientation." (Am. Compl. 6.) Plaintiff also alleges that Rambert retaliated against Plaintiff for filing numerous complaints with government agencies "regarding prostitution[,] sexual harassment[,] sexual coercion and cyber stalking." (*Id*. at 5.)

### 1.    Discrimination claims

Plaintiff's Amended Complaint does not allege sufficient facts to plausibly state that any of the Defendants may be liable for violations of the FHA.  Courts in this Circuit have construed § 3604(b) of the FHA to prohibit the creation of a "hostile environment" by individuals who have control or authority over the "terms, conditions, or privileges of sale or rental of a dwelling," similar to the prohibition imposed by Title VII against the creation of a hostile work environment.[4]  *See Ponce v. 480 E. 21st St., LLC*, No. 12-CV-4828, 2013 WL 4543622, at *2 (E.D.N.Y. Aug. 28, 2013) ("The FHA prohibits discrimination 'against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex.'  Sexual harassment constitutes such discrimination." (citing 42 U.S.C. § 3604(b) and *Rich v. Lubin*, No. 02-CV-6786, 2004 WL 1124662, at *4–5 (S.D.N.Y. May 20, 2004))); *Miles v. Gilray*, No. 12-CV-599S, 2012 WL 2572769, at *1 (W.D.N.Y. June 29, 2012) (finding that the FHA makes it unlawful to discriminate against any person "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin" (quoting 42 U.S.C. § 3604(b) and *Glover v. Jones,* 522 F. Supp. 2d 496, 503 (W.D.N.Y. 2007))); *Glover*, 522 F. Supp. 2d at 503 ("Sexual

---

[4]    Although nearly all of the courts in this Circuit recognizing a cause of action for the creation of a hostile housing environment have done so with regard to allegations of sexual harassment, at least one court has recognized such a cause of action based on membership in another protected class, family status.  *See Khalil v. Farash Corp.*, 260 F. Supp. 2d 582, 583–589 (W.D.N.Y. 2003) (denying defendant's motion for summary judgment on plaintiff's claim that, *inter alia*, the defendant, a management company that managed the plaintiff's housing complex, created a "hostile living environment for families with children" by promulgating and enforcing rules that disfavored families with children); *see also Khalil v. Farash Corp.*, 277 F. App'x 81, 84 (2d Cir. 2008) (assuming, without deciding, that a plaintiff may state a FHA claim of discrimination against families with children based on a hostile housing environment theory).

harassment claims are cognizable under the FHA . . . .  With regard to hostile environment discrimination, 'the legal standard for sexual harassment claims under the FHA has been analogized in the Second Circuit to the standard pertaining to hostile work environment claims under Title VII.'" (alteration omitted) (quoting *Rich*, 2004 WL 1124662, at *4)); *Rich*, 2004 WL 1124662, at *4 ("Sexual harassment constitutes discrimination in the terms, conditions, or privileges of rental of a dwelling on the basis of sex."); *Anonymous v. Goddard Riverside Cmty. Ctr., Inc.*, No. 96-CV-9198, 1997 WL 475165, at *4 (S.D.N.Y. July 18, 1997) ("The Second Circuit has repeatedly recognized that Title VII (employment discrimination) cases are relevant to Title VIII (housing discrimination) cases by virtue of the fact that the 'two statutes are part of a coordinated scheme of federal civil rights laws enacted to end discrimination.'" (quoting *Huntington Branch, NAACP v. Town of Huntington,* 844 F.2d 926, 934 (2d Cir. 1988))); *People of State of N.Y. by Abrams v. Merlino*, 694 F. Supp. 1101, 1104 (S.D.N.Y. 1988) (recognizing sexual harassment claim under the FHA and noting that "plaintiffs, to succeed, must demonstrate . . . a relationship between the harassment and housing"); *see also United States v. Hurt*, 676 F.3d 649, 654 (8th Cir. 2012) ("Sexual harassment is actionable under the FHA when it creates 'a hostile housing environment'. . . ."); *Hall v. Meadowood Ltd. P'ship*, 7 F. App'x 687, 689 (9th Cir. 2001) (recognizing a sexual harassment claim under the FHA (citing *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997))); *Krueger v. Cuomo*, 115 F.3d 487, 491 (7th Cir. 1997) ("This court has recognized that sexual harassment in the housing context can violate the Fair Housing Act." (citing *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996))); *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993) (recognizing a hostile housing environment claim for sexual harassment where a defendant's actions are "sufficiently severe or pervasive to alter the conditions of the housing arrangement and the offensive acts would not have happened but for

claimant's gender" (alteration, citation and internal quotation marks omitted)); *but see Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, 328–30 (7th Cir. 2004) (holding that the Fair Housing Act was only concerned with "access to housing," and not with discrimination that may take place subsequent to the sale or rental of a housing unit, and therefore declining to recognize claim for religious harassment brought by property owner against a homeowners association and its members).

A plaintiff seeking to establish a hostile housing environment claim must establish that (1) "she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile [housing] environment," *Rich*, 2004 WL 1124662, at *4, (2) the harassment was because of the plaintiff's membership in a protected class, *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (Title VII), and (3) "a basis exists for imputing the allegedly harassing conduct to the defendants," *Rich*, 2004 WL 1124662, at *4. As with any claim asserted pursuant to the FHA, a plaintiff must also show a relationship between the discriminatory conduct and housing. *See Abrams*, 694 F. Supp. at 1104 ("[P]laintiffs, to succeed, must demonstrate . . . a relationship between the harassment and housing."). The Amended Complaint does not state a claim of hostile housing environment against any of the Defendants based on either sexual harassment or disability-based harassment.

### A. Defendants Pope, Mitchell, Ruth, Steele and Reid

Plaintiff's Amended Complaint fails to state a claim that the actions of Pope, Mitchell, Ruth, Steele, or Officer Reid comprise sexual harassment in violation of the Fair Housing Act. Pope, Mitchell, Ruth and Steele are Plaintiff's neighbors, tenants in the building, while Officer Reid is an acquaintance of Pope and Steele. Plaintiff does not allege that these Defendants have any control or authority over the "terms, conditions, or privileges of . . . rental of [Plaintiff's]

dwelling, or in the provision of services or facilities in connection therewith," as contemplated by the FHA. *See* 42 U.S.C. § 3604(b).

In the cases recognizing a cause of action for creation of a hostile housing environment under the FHA, the defendants were individuals or entities who own or manage housing and who were alleged to be the source of harassing or hostile actions, or to have an agent who was said source. *See Ponce*, 2013 WL 4543622, at *2 (building superintendent); *Miles*, 2012 WL 2572769, at *1 (owner of a mobile home park); *Glover*, 522 F. Supp. 2d at 504 (property manager); *Williams v. Hernandez*, No. 02-CV-4473, 2004 WL 2793198, at *1 (S.D.N.Y. Dec. 6, 2004) (employee of New York City Housing Authority (NYCHA) where tenant lived in NYCHA-owned and operated housing); *see also Hurt*, 676 F.3d at 651 (owner of trailer park). In contrast, here, Pope, Mitchell, Ruth, and Steele are Plaintiff's neighbors, who reside in the same building, but have no authority or control over the management of the building. Likewise, Reid is a police officer who does not live in the building or otherwise have a relationship to Plaintiff's housing.[5] Therefore, Plaintiff does not state a claim pursuant to § 3604(b) of the Fair Housing Act for sexual harassment against these Defendants.

---

[5] Even assuming that Plaintiff could properly state a claim against her neighbors and a police officer pursuant to the FHA, the Amended Complaint fails to state a claim of sexual harassment as to these Defendants. Plaintiff's broad assertion that "the above allegations are taking place because Plaintiff refuse to get down with prostitution [and] Plaintiff refused to get involved with them sexually," and her reference to having made a complaint to various government agencies about, *inter alia*, sexual harassment, (Am. Compl. 6–7), are insufficient to state a plausible claim that Defendants created a hostile housing environment through sexual harassment. *See Ponce*, 2013 WL 4543622, at *2 (dismissing Plaintiff's sexual harassment claim under the FHA and finding that "Plaintiff's allegations about [a building superintendent's] unspecified 'unwanted sexual advances' and 'sexually explicit and humiliating comments about her anatomy' are 'naked assertion[s]' devoid of 'further factual enhancement' that do not suffice to establish a plausible claim." (quoting *Iqbal,* 556 U.S. at 678)); *Rich*, 2004 WL 1124662, at *4 ("Isolated or sporadic sexually inappropriate acts are not sufficiently pervasive and severe to constitute sexual harassment under the FHA.") The conclusory and nonspecific allegations in

Similarly, Plaintiff does not state a claim of disability harassment against Pope, Mitchell, Ruth and Steele, or Officer Reid under the FHA.  Although the Second Circuit has not recognized a cause of action under the FHA for harassment based on disability, the Eighth Circuit Court of Appeals has done so.  *See Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364–65 (8th Cir. 2003) (recognizing disability harassment claim under the Fair Housing Act where Plaintiff "alleged . . . that he suffers from [obsessive-compulsive disorder], that [defendant, a building management company] subjected him to unwelcome harassment based on his [disability], and that this unwelcome harassment was sufficiently severe to deprive him of his right to enjoy his home, as evidenced by his physical problems and ultimate decision to move out").  In *Neudecker*, the tenants in question were the children of the building managers, who "sent letters to Boisclair property manager . . . containing false counter-accusations as reprisal" for the plaintiff Neudecker's complaints about harassment, and on one occasion one of these tenants "pinned Neudecker against a wall after Neudecker had made another complaint." *Neudecker*, 351 F.3d at 363.  The property manager "falsely accused Neudecker of 'stalking' another tenant and threatened to evict him, and . . . threatened to evict Neudecker 'as reprisal' for his continued complaints about being harassed."  *Id*.  The plaintiff ultimately surrendered his apartment as a result of the harassment.  *Id*.  In contrast here, Plaintiff does not allege that Pope, Mitchell, Ruth and Steele, or Officer Reid have a familial or other relationship to the landlord or manager of the building, nor does she allege that her landlord contributed to the harassment.  Because these Defendants are not alleged to have influenced the landlord or asserted control over the "terms, conditions, or privileges of . . . [the] rental of [Plaintiff's] dwelling, or in the

_____

the Amended Complaint fail to state a claim for sexual harassment against Pope, Mitchell, Ruth, Steele and Reid.  *See Rich*, 2004 WL 1124662, at *4.

provision of services or facilities in connection therewith," as contemplated by the FHA, *see* 42 U.S.C. § 3604(b), the Amended Complaint does not state a claim of disability harassment against Pope, Mitchell, Ruth and Steele, or Officer Reid.[6]

## B. Defendant Rambert

Plaintiff alleges that her landlord, Rambert, "created a hostile living environment by not responding to any of Plaintiff[']s request for intervention." (Am. Compl. 8.) These allegations fail to state a claim of hostile housing environment against Rambert, based on either Plaintiff's gender or her disability. Plaintiff does not allege that Rambert harassed her. Plaintiff also does not allege that Pope, Mitchell, Ruth, Steele or Reid are agents of Rambert. Therefore, because there is no basis for imputing the allegedly harassing conduct by the other tenants to Rambert, Plaintiff has not stated a claim of harassment on the basis of either gender or disability against Rambert. *See Rich*, 2004 WL 1124662 (noting that a plaintiff alleging a hostile housing environment claim must establish "that a basis exists for imputing the allegedly harassing conduct to the defendants").

---

[6] In addition, Plaintiff's allegation that Pope, Steele and Mitchell harassed her by "yelling the same rant" and telling her that she should be on medication, (Am. Compl. 3), is not sufficiently pervasive or severe to create a hostile environment on the basis of Plaintiff's disability or perceived disability. *See Rich*, 2004 WL 1124662, at *3. While Plaintiff alleges that Ruth and Steele are using an acoustic device that emits harmful noises "lasting throughout the day using different sound effects that are harmful to Plaintiff['s] hearing . . . and interrupts sleep," she does not allege that these actions are because of Plaintiff's disability, nor does the Amended Complaint allege facts from which the Court can reasonably infer that Plaintiff's disability is a motivating-factor for Ruth and Steele's actions. Plaintiff's other allegations regarding the use of the Internet to spread defamatory comments about Plaintiff's "mental capacity" do not implicate Plaintiff's housing as required under the Fair Housing Act. *Cf. United States v. Weisz*, 914 F. Supp. 1050, 1054 (S.D.N.Y. 1996) ("[T]o bring a claim within§ 3617 [of the FHA], a plaintiff must allege conduct on the part of a defendant which in some way or other implicates the concerns expressed by Congress in the FHA. If it were otherwise, the FHA would federalize any dispute involving residences and people who live in them.").

Plaintiff alleges that Rambert created a "hostile living environment" by failing to intervene to stop the alleged harassment from her neighbors. (Am. Compl. 8.) The Eighth Circuit and some district courts have recognized that a landlord's willful failure to intervene in tenant-on-tenant harassment may be a violation of the FHA. *See Neudecker*, 351 F.3d at 365 ("While Neudecker does not allege that Boisclair's agents themselves harassed him, he does allege that tenants — including children of Boisclair's management team — constantly harassed and threatened him based on his disability; that he repeatedly complained to Boisclair management about the harassment to no avail; and that he ultimately moved from his apartment out of concerns for his health stemming from the harassment."); *Fahnbulleh v. GFZ Realty, LLC*, 795 F. Supp. 2d 360, 364 (D. Md. 2011) ("[C]onduct is imputable to a landlord, if the landlord knew or should have known of the harassment, and took no effectual action to correct the situation.'" (quoting *Williams v. Poretsky Mgmt., Inc.*, 955 F. Supp. 490, 496 (D. Md. 1996))); *Reeves v. Carrollsburg Condo. Unit Owners Ass'n*, No. 96-CV-2495, 1997 WL 1877201, at *7 (D.D.C. Dec. 18, 1997) (finding that a defendant condominium association could be held liable for creation of a hostile housing environment where the defendant "knew or should have known of the harassment, and took no effectual action to correct the situation"). Neither the Second Circuit nor district courts in this Circuit have opined on whether a landlord may be held liable under the FHA for failing to intervene in harassment between tenants based on protected status. However, the Court need not resolve whether the FHA permits such a claim because, as discussed above in footnotes 5 and 6, the Amended Complaint fails to state a plausible claim of harassment based on either gender or disability against the other tenants in Rambert's building, and therefore fails to state a claim against Rambert for discrimination pursuant to the FHA.

## 2. Retaliation claim

Plaintiff alleges that "[b]ecause Plaintiff made numerous complaints to various government agencies regarding . . . sexual harassment sexual coercion and cyber stalking . . . Rambert petitioned Plaintiff to court for holdover proceeding." (Am. Compl. 5; *see also id*. at 7, 9).[7] To establish a *prima facie* case of retaliation under the FHA, a plaintiff must show that she was (1) "engaged in protected activity by opposing conduct prohibited under the FHA; (2) that defendants were aware of that activity; (3) that defendants subsequently took adverse action against plaintiffs; and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse action." *Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 432 (S.D.N.Y. 2005) (citing *Marks v. BLDG Mgmt. Co., Inc.*, No. 99-CV-5733, 2002 WL 764473, at *9 (S.D.N.Y. Apr. 26, 2002), *aff'd*, 56 F. App'x 62, and *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002)); *cf. Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (noting that in order to establish a *prima facie* case of retaliation under Title VII, a plaintiff must establish "(1) she engaged in protected activity; (2) the [defendant] was aware of this activity; (3) the [plaintiff] suffered a materially adverse employment action; and (4) there was a causal connection between the alleged adverse action and the protected activity." (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012))).  To be actionable, an adverse action "must have some materially adverse effect on the plaintiff." *Joseph's House & Shelter, Inc. v. City of Troy, N.Y.*, 641 F. Supp. 2d 154, 159 (N.D.N.Y. 2009) (quoting *Marks*, 2002 WL 764473, at *11).

---

[7] Plaintiff's Amended Complaint states: "After Plaintiff made several complaints to the 81st. Precinct, United States Attorney General, NYPD Internal Affairs and Brooklyn North Vice regarding the sexual harassment, gender discrimination [and] perceived disability discrimination . . . , Defendant Landlord, Jerome Rambert, brought several frivolous housing cases against Plaintiff in Retaliation for making complaints to various government agencies." (Am. Compl. 7.)

Filing a police complaint about sexual harassment is "protected activity," at least where the plaintiff "'had a good faith, reasonable belief' that she was opposing an unlawful practice." *See Ponce*, 2013 WL 4543622, at *3, 3 n.4 (quoting *Kelly*, 716 F.3d at 14). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Kelly*, 716 F.3d at 14–15 (discussing Title VII). Plaintiff need not establish that the underlying conduct that was the subject of the police complaint was an actual violation of the FHA, but courts in this Circuit "do require the allegation of factual circumstances that permit the inference that plaintiff was subjected to a hostile . . . environment because of her [protected status]." *Kelly*, 716 F.3d at 15 (discussing Title VII).

Here, the Amended Complaint does not make clear whether Rambert was aware of Plaintiff's police complaints or complaints to other government agencies. Although Plaintiff alleges "[a]fter making complaints to various government agencies Defendant Rambert retaliated against Plaintiff, brought frivolous hold over proceedings," (Am. Compl. 4), this establishes only that Rambert initiated the holdover proceedings subsequent to Plaintiff's complaints to government agencies. The Amended Complaint provides insufficient factual assertions to permit the inference that Rambert was aware of the complaints when he initiated the holdover proceedings. While Plaintiff does allege that she sent over 400 text messages to Rambert "describing the events taking place on [the] property as they unfold," (*id*. at 4), Plaintiff has not alleged that she told Rambert of her complaints to the police or other government agencies.[8]

However, even assuming that Rambert was aware of Plaintiff's complaints when he initiated holdover proceedings, the Amended Complaint does not establish that Plaintiff had a

_____

[8] The Amended Complaint also states that "certified notarized mail" sent by Plaintiff to Rambert was refused by Rambert. (Am. Compl. 5 and Ex. 2.)

reasonable belief that she was opposing a practice made unlawful by the FHA. Plaintiff's complaints to the police, appended to her Amended Complaint, include statements that she "is being harassed by downstairs neighbors [and that f]or a long time they have been trying to get [Plaintiff] in a prostitution business and calling her crazy," (Am. Compl. Ex. 3, Police Complaint # 2013-081-04729, dated August 2, 2013), that "while she is in her apartment she hears the downstairs and upstairs neighbors talking about her calling her a 'cuckoo,'" (Am. Compl. Ex. 3, Police Complaint # 2013-081-04006, dated July 2, 2013), that her neighbors "continue[] to annoy and alarm her by posting pictures and contacting her online and sending her emails," (Am. Compl. Ex. 3, Police Complaint # 2013-08-05085, dated August 17, 2013), and "she is being 'harassed' by her neighbors on the 1st floor, [who] was shouting her name and banging on window, calling her 'cuckoo,'" (Police Complaint # 2013-081-02699 dated May 9, 2013, appended to Am. Compl. at 41).

As discussed *supra* in part II.b.ii.1.A, nothing in Plaintiff's complaints to the police indicate that she was opposing or complaining about harassment related to availability of her housing, or to the terms and conditions of her housing, other than the fact that the alleged harassers were her neighbors. *Cf. Kelly*, 716 F.3d at 15 (finding that plaintiff did not have a good faith reasonable belief that the conduct she was complaining about was unlawful discrimination because "[a]lthough Kelly alleges that she repeatedly used the words 'discrimination' and 'harassment' when complaining to her employers, her argument that the [complained-of conduct] constituted gender discrimination because it resulted in an atmosphere demeaning to women is entirely unsupported by the allegations in her complaint"). Similarly, Plaintiff's pleadings are insufficient to plausibly show that she had a reasonable belief that she was being harassed because of her disability, or that her complaints to other government agencies were based on

17

such a belief.   Even in light of her complaints to the police that her neighbors were calling her "cuckoo," assessing the "reasonableness of the plaintiff's belief . . . in light of the totality of the circumstances," Plaintiff's complaints to the police about her neighbors' name-calling are not sufficient to permit the inference that Plaintiff *reasonably* believed that she was being subjected to a hostile environment because of her disability, in violation of the FHA.  *See Kelly*, 716 F.3d at 14–15; *Drumm v. Suny Geneseo Coll.*, 486 F. App'x 912, 914 (2d Cir. 2012) (finding that "plaintiff's allegations that her supervisor 'berated' her and made other harsh comments . . . amount only to general allegations of mistreatment, and do not support an inference that plaintiff had a reasonable good faith belief that she was subject to gender discrimination").  Therefore, the Amended Complaint fails to state a claim of retaliation under the FHA against Rambert.

### iii.   Rehabilitation Act claim

Section 504 of the Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794; *Bryant v. N.Y.S. Educ. Dept.*, 692 F.3d 202, 216 (2d Cir. 2012).  Although Plaintiff alleges that all the Defendants residing in the building "receive some form of Federal Government subsidy," (Am Compl. 8 ¶ 22), this allegation is insufficient to establish liability against Rambert pursuant to the Rehabilitation Act.  *See Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 264 (E.D.N.Y. 2009) (recognizing that "an entity or person who receives housing assistance payments under a housing assistance payments program or a voucher program is not a 'recipient' of federal financial assistance by virtue of receipt of such payments" (quoting *Echeverria v. Krystie Manor, LP*, No. 07-CV-1369, 2009 WL 857629, at *7 (E.D.N.Y. Mar. 30, 2009))); 24 C.F.R. § 8.3 ("An

entity or person receiving housing assistance payments from a recipient on behalf of eligible families under a housing assistance payments program or a voucher program is not a recipient or subrecipient merely by virtue of receipt of such payments.").

This allegation is also insufficient to establish potential liability as to the other tenants in the building or Officer Reid, as the plain language of the Rehabilitation Act and the accompanying regulations make clear that the prohibitions in the Act apply to a "program or activity receiving Federal financial assistance," and not to individual families who are the direct recipients of housing rental assistance. *See* 29 U.S.C. § 794(a)–(b) ("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. For the purposes of this section, the term 'program or activity' means all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government . . . a college, university, or other postsecondary institution, or a public system of higher education . . . a local educational agency . . . [or] an entire corporation, partnership, or other private organization, or an entire sole proprietorship."); 24 C.F.R. §§ 8.3–8.4 (same). Accordingly, the Amended Complaint does not state a claim pursuant to Section 504 of the Rehabilitation Act against either Rambert, the other tenants in the building or Officer Reid.

### iv.   ADA claim

Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of *public accommodation* by any person who owns, leases (or leases to), or operates a

place of public accommodation." 42 U.S.C. § 12182 (emphasis added); *see also Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592, 2012 WL 3961304, at *6 (S.D.N.Y. Sept. 11, 2012).

Here, Plaintiff has not alleged sufficient facts to establish that the residential building is a place of public accommodation. *See Reyes*, 661 F. Supp. 2d at 264 (finding that "receipt of Section 8 housing vouchers is an insufficient basis upon which to deem the premises — a private, residential apartment complex — a place of public accommodation"); *accord Hardaway v. Equity Residential Mgmt., LLC*, No. 11-CV-A1924, 2012 WL 3903489, at *5 (D. Md. Sept. 6, 2012) (same); *Mitchell v. Walters*, No. 10-CV-A1061, 2010 WL 3614210, at *4 (D.N.J. Sept. 8, 2010) (same). As a result, the Amended Complaint does not state a claim under Title III of the ADA.

### v.    Equal Protection claim

To state a claim under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, "a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his [protected status]." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000). Plaintiff has not alleged that any of the Defendants are "government actors," as required to bring a claim pursuant to the Equal Protection Clause, and all Defendants appear to be private citizens. Therefore, the Amended Complaint does not state a claim for violation of the Equal Protection Clause of the United States Constitution.

In sum, Plaintiff has not stated a claim under any federal law, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.[9] *See* 28 U.S.C. § 1367(c)(3).

---

[9] Plaintiff also brings claims pursuant to the "Equal Justice Under Telecommunications Act as amended," which she refers to as the "Law Cyber Stalking." (Am. Compl. 4, 11.) The Court is unclear as to the statute Plaintiff is relying on. The Court is aware of a criminal statute which addresses stalking, making it a criminal offense to use "the mail, any interactive computer service or electronic communication service or electronic communication system of interstate

("District courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.").  Because Plaintiff's Amended Complaint does not contain sufficient facts that may fairly be read to state a claim for housing or disability-based discrimination or violation of any of Plaintiff's constitutional rights, Plaintiff's Amended Complaint is dismissed.  In view of Plaintiff's failure to state a valid claim, Plaintiff's request for the appointment of *pro bono* counsel is denied.  *See Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) (motions for appointment of pro bono counsel considered "by asking first whether the claimant has met a threshold showing of some likelihood of merit" (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989) and *Hodge v. Police Officers*, 802 F.2d 58, 59 (2d Cir. 1986))).

---

commerce, or any other facility of interstate or foreign commerce, [with the intent to kill, injure, harass, intimidate] to engage in a course of conduct that places that person in reasonable fear of the death of or serious bodily injury to [that person, an immediate family member, or a spouse or intimate partner]  or causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person."  18 U.S.C. § 2261A.  However, there is no private right of action to enforce this criminal statute, which, as a general matter, is prosecuted by the government and not by private individuals.  *See Rock v. BAE Sys., Inc.*, --- F. App'x ---, ---, 2014 WL 715606, at *2 (11th Cir. Feb. 26, 2014) (holding that there is no private right of action under § 2261A); *Weinstein v. City of New York*, No. 13-CV-06301, 2014 WL 1378129, at *4 (S.D.N.Y. Apr. 8, 2014) ("Violations of the Criminal Code do not provide a basis for a civil cause of action, unless the particular provision in question includes an express or implied private right of action."); *Hopson v. Commonwealth Attorney's Office*, No. 12-CV-744, 2013 WL 1411234, at *3 (W.D. Ky. Apr. 8, 2013) ("It is clear that § 2261A does not provide for a private cause of action or civil remedies." (collecting cases)); *Jacobus v. Huerta*, No. 12-CV-02032, 2013 WL 673233, at *12 (S.D.W. Va. Feb. 22, 2013) (finding no private right of action under § 18 U.S.C. § 2261A), *report and recommendation adopted*, No. 12-CV-02032, 2013 WL 1723631 (S.D.W. Va. Apr. 22, 2013); *Dorr v. Ford Motor Co.*, No. 10-CV-13822, 2011 WL 5857886, at *9 (E.D. Mich. Sept. 27, 2011) (same), *report and recommendation adopted*, No. 10-CV-13822, 2011 WL 5838582 (E.D. Mich. Nov. 21, 2011).  Therefore, to the extent Plaintiff seeks to bring a claim pursuant to 18 U.S.C. 2261A, the claim is dismissed for failure to state a claim upon which relief may be granted.

### III.  Conclusion

Plaintiff's Federal claims in the Amended Complaint are dismissed for failure to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B).  Plaintiff's request for the appointment of *pro bono* counsel is denied.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and they are dismissed without prejudice.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).   The Clerk of Court is directed to close this case.

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge


Dated: May 30, 2014
         Brooklyn, New York